NORRIS, Judge.
This is a suit to declare a contract null and void. The parties to the contract are the Fourth Judicial District Indigent Defender Board (“Board”) and a group of five attorneys who submitted a successful bid proposal (“the Jones group”). The purpose of the contract was to secure attorneys to represent indigente in Ouachita Parish. The plaintiff is an attorney who had served on the Board on a volunteer basis for many years until he was effectively removed by the contract with the Jones group. He initially filed a summary proceeding which was later amended as a suit for declaratory judgment. The trial court, in a detailed and well-reasoned opinion, ruled in favor of the plaintiff and set aside the contract. The Board and the Jones group now appeal and, for the reasons expressed, we affirm.
For our statement of facte we will essentially paraphrase the trial court’s lengthy opinion. The Fourth Judicial District, composed of Ouachita and Morehouse Parishes, has a Board made up of six members. Prior to November 1, 1985, the appointments for indigent felony cases in Ouachita Parish were on a successive basis from a list of volunteer attorneys. The volunteer list had, on earlier occasions, been used for all indigent appointments. During the years before mid-1984, deficits were created because the monthly billings by attorneys under the approved rate schedules, plus operational expenses, regularly exceeded receipts from costs and other sources. By mid-1984 the Board had accumulated a deficit of about $250,000. Because of the deficit, the Board was at least one year late in the payment of bills submitted by volunteer attorneys.
In an effort to reduce the monthly charges billed by attorneys, the Board in about July 1984 entered into a contract with one attorney in Morehouse Parish for representation of all indigent cases there for a fixed sum of $1,500 per month. The Board also contracted with three attorneys in Ouachita Parish for representation of all misdemeanor cases there for a fixed sum of $900 per month per attorney. This action resulted in a substantial reduction in the deficit to about $189,000 by April 1985.
The plaintiff, Diehlmann C. Bernhardt, and perhaps others suggested to the Board that because of the inequities of the system then being used, a contract method of employment of attorneys for Ouachita Parish *1079 felony cases was the only permanent solution. Initially the Board rejected this approach and maintained the system of appointments from the volunteer list. But in the fall of 1985, a number of attorneys on the volunteer list, including plaintiff, withdrew their names. By October 1985, the volunteer list had dwindled to three attorneys, and this number was not sufficient for the number of indigents requiring representation. When asked about the prospect of using a nonvolunteer system, the president of the local bar association said that the members would be mostly dissatisfied with having to participate on that basis.
The Board then solicited proposals from attorneys interested in representing indigents on a contract basis. Certain specifications were set forth in the solicitation mailed to all members of the Fourth District Bar. Four proposals, including one from plaintiff, Mr. Bernhardt, were submitted to the Board. Plaintiff’s was not accepted. The proposal from the Jones group was accepted and reduced to contract form. It was executed by the parties and became effective November 1, 1985. The agreement generally provides for the contract attorneys to receive the revenues, pay off the outstanding debt, and to accumulate a retainage in a Board general fund account. The Board contemplated that this retainage, which would total $60,000 at the end of the five-year contract term, would be used to establish a Public Defender Office at that time.
The authority for selecting and compensating attorneys is found in LSA-Const. Art. I § 13.[1] Pursuant to this authority, the legislature enacted LSA-R.S. 15:145. A very close examination of this long statute is necessary to resolve this case. Subsection 145 A provides as follows:
A. Each district board shall maintain a current panel of volunteer attorneys licensed to practice law in this state and shall additionally maintain a current panel of nonvolunteer attorneys under the age of fifty-five licensed to practice law in this state and residing in the judicial district. The panel of nonvolunteer attorneys shall not include any attorney who has been licensed to practice in this state for thirty or more years.
In its first assignment of error, the Board[2] challenges Bernhardt’s standing to contest the contract. It points out that Bernhardt had withdrawn from the volunteer list a month or so before the Jones group won the contract; thus he was not deprived of voluntary appointments. The Board also argues that because Bernhardt had practiced law in Louisiana for over 30 years, he was ineligible for involuntary service. Thus, the Board contends, Bernhardt was already outside the reach of indigent defense both ways and lacked standing to challenge the new arrangement. LSA-C. C.P. art. 681.[3]
The facts show, however, that Bernhardt is not as much of an outsider to this matter as the Board believes. On November 11, 1985, he sent a written request to have his. name returned to the volunteer panel. Having served constantly until September 1985, he is a substantial creditor of the Board and has a tangible interest in seeing that its procedures assure the eventual dissolution of the debt.
Furthermore, the law of declaratory judgment permits suit by a broad class of claimants. LSA-C.C.P. art. 1872 provides:
A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, con *1080 tract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
We think Bernhardt’s right to serve as a compensated indigent defender is affected both by the contract and by the statute. Standing in declaratory suits must be liberally construed, LSA-C.C.P. art. 1881, and under this standard Bernhardt has made a sufficient showing.
The Board has placed mistaken reliance on our recent case of Caldwell v. Second Judicial Dist IDB, 475 So.2d 96 (La.App. 2d Cir.1985), writ denied 477 So.2d 1126 (La.1985). In Caldwell the indigent defender board did not maintain the list mandated by R.S. 15:145A. Contrary to the Board’s assertion in brief, we held that the plaintiff had standing to sue after he unsuccessfully requested to be added to the nonexistent list. We denied the relief sought because before trial, the indigent defender board established a list and included the plaintiff's name on it; thus there was no way for the court to order relief. We did not hold that the plaintiff lacked standing; perhaps his suit encouraged the board to move into compliance. In the instant case, the issue remains whether the Board had authority to enter the contract. Bernhardt, like the plaintiff in Caldwell, has standing to sue.
In its second and third assignments of error, the Board makes the substantive claim that the court misinterpreted the statute. It argues that the trial court should not have denied the Board the discretion to establish a system of discharging its constitutional duty of providing defense for indigents. The Board claims the statute is broad enough to authorize the action taken. The statute provides as follows:
B.Each district board shall select one of the following procedures or any combination thereof for providing counsel for indigent defendants:
(1)(a) Appointment by the court from a list provided by the district board of volunteer attorneys licensed to practice law in this state. In the event of an inadequate number of volunteer attorneys, appointment shall be from a list provided by the district board of non-volunteer attorneys as provided in Subsection A of this Section. The court may delegate appointing power to the district board.
(b) All appointments shall be on a successive basis. Deviations from the ;panel list shall be 'permitted only to comply with Article 512 of the Code of Criminal Procedure and in exceptional circumstances upon approval of the district board.
(2) Appointment of a chief indigent defender. The district board may employ a chief indigent defender and such assistants and supporting personnel as it deems necessary. The chief indigent defender shall be appointed for a period of three years and may not be a member of the board. The salaries of the chief indigent defender and all assistants and supporting personnel shall be fixed by the district board. All employees of the board shall possess such powers and duties as prescribed by the district board and consistent with the Code of Professional Responsibility.
The chief indigent defender may in the event of conflicts of interest, inadequate personnel or for any other reason approved by the board request that the court appoint counsel for indigent defendants pursuant to Section 145(B)(1).
(3) In a judicial district comprising more than one parish, the board may select the method of providing counsel for indigents on an individual parish basis.
C. The district board shall adopt rules for the transaction of business and shall keep an accurate record of all its proceedings and official actions. All papers, documents, and records of the board shall be filed at the domicile of the board.
D. The district board shall keep accurate records of the information set forth *1081 in R.S. 15:143(B) and shall furnish such information to the state board upon request.
D. The district board may expend funds for its necessary expenses, including compensating its employees and reimbursing the district board members for actual expenses in traveling to and from district board meetings and otherwise incurred while on district board business.
F. The district board may accept, receive, and use public or private grants. Copies of applications for public or private grants shall be forwarded to the state board.
G. The district board shall possess such other authority as is necessary to carry out the intent and purposes of this Code Title, (emphasis added)
The Board points especially to the provisions for “exceptional circumstances” and “other authority” in support of its action. The exceptional circumstances were the large and growing deficit and the unwillingness of local attorneys to serve on a nonvolunteer basis. The Board stresses that the retainage system created by the contract is a step in the direction of establishing an Indigent Defender Office, which is authorized under § 145 B(2). This, the Board claims, makes the contract an element of the “other authority” necessary to carry out the intent and purposes of the law.
The trial court reasoned that R.S. 15:145 authorizes only two methods, or a combination of the two methods, as the procedures which the Board may utilize. The exception provided in § 145 B(1)(b) applies, by plain reading, only to deviations from the successive appointment from the panel. It contemplates maintaining the panel system intact and not disregarding it as in the instant contractual scheme.
As for the “other authority” provision, it is indeed pertinent to grant the Board discretion in some situations. However, it cannot be construed to permit an abandonment of the substantive and exclusive procedures prescribed in the first part of the statute, § 145 B. This would violate the spirit of the law. LSA-C.C. art. 18.[4] We find no error in the trial court’s analysis.
We agree with the trial court that the contract system was a reasonable and efficient approach to a serious problem. We note that plaintiff himself had recommended it, and showed disapproval only after he failed to win the bid. The trial court was nevertheless constrained to hold that the statute did not permit the contract system and we must agree. Any doubt as to the validity of this holding is obviated by a subsequent amendment to the statute. In 1986 the legislature inserted a § 145 B(3) as follows:[5]
(3) Contracting for legal services. The district board may enter into a contract or contracts, on such terms and conditions as it deems advisable, with one or more attorneys licensed to practice law in this state and residing in the judicial district to provide counsel for indigent defendants.
LSA-Acts 1986 No. 94. This act does not declare itself remedial or retroactive. Until its effective date, the contract system was not authorized by statute. The trial court was not in error to hold that a contract was not a viable alternative;[6] thus, the contract between the Board and the Jones group was null and void.
For these reasons, the judgment is affirmed. Costs are assessed to the Board.
AFFIRMED.

. LSA-Const. Art. I § 13 provides in part:
* * * The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.

. Here and subsequently we will refer to all appellants as the Board since they are allied on appeal.

.LSA-C.C.P. art. 681 provides:
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.

.LSA-C.C. art. 18 provides:
The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.

. The previous subsection 145 B(3) is redesigna-ted as 145 B(4) under the amendment.

. For this reason, the Board’s appeal to the great discretion accorded an agency determination is not relevant. An agency or board does not have the discretion to alter the law. LSA-R.S, 49:963.